IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI‛I

| | | |
|---|---|---|
| STEPHANIE STUCKY, | ) | CV. NO. 09-00209 DAE BMK |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| STATE OF HAWAII | ) | |
| DEPARTMENT OF EDUCATION; | ) | |
| PATRICIA HAMAMOTO, | ) | |
| Superintendent; KEN NOMURA, | ) | |
| Complex Area Superintendent; | ) | |
| CATHARINE KILBORN, Principal, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

ORDER GRANTING DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT

Pursuant to Local Rule 7.2(d), the Court finds this matter suitable for

disposition without a hearing.  After reviewing Defendants' motions and the

supporting and opposing memoranda, the Court **GRANTS** Defendants' Motions

for Summary Judgment.  (Docs. ## 29, 33.)

BACKGROUND

The parties are very familiar with the issues in this case.  The Court

only recites those facts that are relevant to determination of the instant motion.

I.   <u>Factual Background</u>

Plaintiff Stephanie Stucky ("Plaintiff") was formerly employed as a music teacher at Iao Intermediate School on Maui ("Iao").  ("Compl.," ¶ 1, Doc. # 1.)  Defendant Catherine Kilborn ("Kilborn") is the principal at Iao and has direct oversight over its teachers, including Plaintiff.  (<u>Id.</u> ¶ 4.)   Defendant Kenneth Nomura ("Nomura") was formerly the Complex Area Superintendent.  (<u>Id.</u> ¶ 5.) Defendant Patricia Hamamoto ("Hamamoto") was formerly the Superintendent of the State of Hawaii Department of Education ("DOE.") [1]  (<u>Id.</u> ¶ 3.)

Plaintiff taught band classes at Iao during the 2005-2006 school year. ("DOE MSJ," Doc. # 29 at 1.)  On January 27, 2006, Kilborn suspended Plaintiff for three working days without pay, stemming from an incident on December 2, 2005, in Plaintiff's third period band class.  (<u>Id.</u>, Ex. C.)  On April 5, 2006, Complex Area Superintendent Nomura affirmed that suspension.  (<u>Id.</u>)

At the end of the 2005-2006 school year, the Plaintiff underwent a PEP-T (Professional Evaluation Program for Teachers) job performance evaluation conducted by the principal of her school.  (<u>Id.</u>, Ex. E1 at 2, Doc. # 32.)  On May

_____

[1] Patricia Hamamoto is listed as a defendant in her official capacity as Superintendent of the DOE.  Hamamoto no longer holds that position, but for purposes of convenience in describing the facts of the case the Court will continue to refer to Patricia Hamamoto.  Likewise, Kenneth Nomura is now retired from the DOE but will continue to be referred to in this Order.

25, 2006, Plaintiff received an overall unsatisfactory job performance rating, earning two "marginal" marks and three "unsatisfactory" marks in the five areas evaluated. (Id.)  The 250-plus page document includes summaries of conferences Kilborn held with Plaintiff, complaints from parents and students about Plaintiff, a copy of Vice Principal Michael O'Neal's investigation report on the December 2, 2005 incident, notes from Kilborn's classroom observations, and many emails exchanged between Plaintiff and Kilborn.  (Id., Ex. E.)

Kilborn sent Plaintiff a letter informing her of a decision to recommend her termination on June 9, 2006.  (Id., Ex. I.)  Kilborn cited Plaintiff's unsatisfactory evaluation as the basis for her recommendation.  (Id.)  Plaintiff was also informed of her right to meet with Kilborn or to submit her written comments to Nomura.  (Id.)  Kilborn sent her recommendation to Nomura that same day. (Id., Ex. J.)  On July 21, 2006, Nomura notified Plaintiff of his decision to place her on leave with pay for ten working days beginning on July 25, 2006 in order to "provide adequate time to complete the process of the recommendation for termination made by Catherine Kilborn."  (Id., Ex. L.)  Nomura ultimately concurred with Kilborn's recommendation and notified Plaintiff of his recommendation to Superintendent Hamamoto on August 1, 2006.  (Id., Ex. M; id., Ex. O.)

On August 4, 2006, Superintendent Hamamoto extended Plaintiff's period of leave with pay to provide additional time to complete the process of the recommendation for termination.  (Id., Ex. O.)  The parties met in September 2006 to discuss the recommendation.  (Id., Ex. P.)  In a letter to Plaintiff dated February 15, 2008, Hamamoto offered to hold another meeting on February 26, 2008, "[i]n light of the fact that some time has passed since our last meeting, I would like to give you another opportunity to further discuss this recommendation prior to my making a decision."  (Id.)  After the February meeting, on May 1, 2009, Hamamoto informed Plaintiff of her decision to terminate her effective May 11, 2009 (Plaintiff's "final termination").  (Id., Ex. Q.)  Plaintiff's unsatisfactory review and the supporting documents were again cited as the basis for termination.  (Id.)

II.     Procedural Background

    A.     Previous Cases

        On January 3, 2006, Plaintiff filed her first suit in federal court against the DOE, Patricia Hamamoto in her official capacity, Kenneth Nomura in his official capacity, and Catherine Kilborn in her individual and official capacity. ("Kilborn MSJ," Doc. # 33-3 at 5; "Stucky I," CV. No. 06-00002 JMS-LEK.)  The complaint alleged Defendants retaliated against Plaintiff in violation of Title VII (Count I), discriminated against her on account of her gender in violation of Title

4

IX (Count II), violated the Hawaii Fair Employment Act (Count III), and acted with such malice as to be liable for punitive damages (Count IV).  On February 15, 2007, summary judgment was granted in favor of the defendants on all counts. ("Stucky I Order," Stucky I, Doc. # 54 at 1-2.)

As to Count I, the court determined that Plaintiff failed to meet her burden to show "by a preponderance of the evidence that engaging in the protected activity was one of the reasons for [the adverse employment action] and that but for such activity [she] would not have [suffered the adverse employment action]." (Id. at 12 (citing Villiarimo v. Aloha Island Air, Inc., 281 F. 3d 1054, 1064-65 (9th Cir. 2002) (citations omitted)).)  The court stated that the protected actions which Plaintiff alleged led to Defendants' retaliatory activity, namely a 1998 age discrimination complaint and a 2000 retaliation and discrimination complaint filed with the Hawaii Civil Rights Commission ("HCRC"), occurred long before the retaliatory acts Plaintiff complains of began (in 2005.)  (Id. at 10.)  The court concluded that a period of five years was too long to establish a connection between protected activity and an alleged violation and that Plaintiff failed to provide any other evidence that linked the protected HCRC complaints with Defendants' 2005 actions.  (Id. at 13.)

As to Count II, the court determined that to set forth a prima facie Title IX gender discrimination claim, Plaintiff was required to show that (1) she belongs to a protected class; (2) she was qualified for her job; (3) she suffered an adverse employment action; and (4) her employer treated her differently than a similarly situated individual not belonging to her protected class.  (<u>Id.</u> at 18 (citing <u>See</u> <u>Cornwell v. Electra Cent. Union</u>, 439 F.3d 1018, 1028 (9th Cir. 2006.)).)  The Court found that Plaintiff fulfilled the first two criteria, as her gender places her in a protected class and there was no evidence to show that she was incapable of fulfilling her responsibilities.  (<u>Id.</u>)  In analyzing the third criterion, confusion over whether or not Plaintiff had been terminated and reinstated, or threatened with termination, in 2005 and a concern that Kilborn and Nomura may have planned to terminate Plaintiff until the HSTA declared that doing so would violate the HSTA-DOE contract persuaded the court that Plaintiff showed an adverse employment action.  (<u>Id.</u> at 19-20.)  However, the court found that Defendants forwarded legitimate, non-discriminatory reasons for their actions, including assertions that they received complaints from parents regarding Plaintiff's behavior and that in 2005 the school proposed to cut certain electives (including music classes) to create extra time for reading, math and language classes.  (<u>Id.</u> at 20-21.)  Regarding the fourth criterion, the fact that Plaintiff was required to provide written

explanations of her grading policy while another, male music teacher was not required to do so convinced the court that Plaintiff received disparate treatment as compared to similarly situated males.  (Id. at 20.)  However, the court found that a sample size of two individuals was not large enough to infer discrimination.  It was therefore decided that Plaintiff did not bring sufficient evidence to prove that she was targeted or discriminated against on account of her gender.  (Id. at 22.)[2]  The Court then declined to exercise supplemental jurisdiction over Plaintiff's state law claims (Counts III and IV) and dismissed them pursuant to 28 U.S.C. § 1367(c)(3).

On March 9, 2007, Plaintiff appealed the Stucky I court's decision to the Ninth Circuit.  (Stucky I, Doc. # 56.)  On June 20, 2008, the Ninth Circuit affirmed the district court's order on all counts and determined that: (1) Plaintiff's last protected activity occurred five years prior to the alleged acts of retaliation; (2) a five-year gap was too long to substantiate Plaintiff's claim that she was retaliated against for engaging in protected activity; (3) Plaintiff failed to produce any evidence that Defendants' proffered non-discriminatory reasons for her treatment

---

[2] The court dismissed Plaintiff's claims of retaliation and gender discrimination against Kilborn in her individual capacity on the grounds that neither Title VII nor Title IX provide for individual liability.  (Id. at 22 (citing Pink v. Modoc Indian Health Project, 157 F.3d 1185, 1189 (9th Cir. 1998) (determining there is no individual liability under Title VII) and Shotz v. City of Plantation, Fla., 344 F.3d 1161, 1170 n.12 (11th Cir. 2003) (noting that Title IX does not provide for individual liability.)).)

were pretextual; and (4) the district court had the discretion to decline to address pendant state-law claims after granting summary judgment to Defendants on the federal claims.  (Stucky I, Doc. # 66-1 at 2-5.)

On November 2, 2006, Plaintiff filed a second suit in federal court against the DOE, Patricia Hamamoto in her official capacity, Kenneth Nomura in his official capacity and Catherine Kilborn in her official and individual capacities. ("Kilborn Mot.," at 5; "Stucky II," CV. No. 06-00594 JMS- KSC.) Plaintiff's original complaint alleged that Defendants acted in retaliation against Plaintiff for engaging in protected activity in violation of Title VII (Count I); Defendants discriminated against Plaintiff because of her gender in violation of Title IX (Count II); Defendants violated the State of Hawaii Fair Employment Act (Count III); Defendants acted with such malice as to be liable for punitive damages (Count IV); Defendants retaliated against Plaintiff for filing complaints of civil rights discrimination in violation of Title VII, Illegal Retaliation Under Color of State Law (Count V); and Defendants intentionally inflicted emotional distress ("IIED") upon Plaintiff (Count VI).  ("Orig. Compl.," Stucky II, Doc. # 1, 10-3.)  On March 20, 2007, the court issued an order dismissing Counts I, II and V against Kilborn in her individual capacity.  (Stucky II, Doc. # 21.)

On May 29, 2007, Plaintiff filed a First Amended Complaint ("FAC") against the DOE, Patricia Hamamoto in her official capacity, Kenneth Nomura in his official capacity and Catherine Kilborn in her official and individual capacities. ("Kilborn Mot.,"at 5; Stucky II, FAC, Doc. # 43.)  Plaintiff sought to amend her Complaint to add causes of action for violations of 42 U.S.C. § 1981, Title VI, 42 U.S.C. 2000(d), a second violation of 42 U.S.C. 1983, and a violation of the Fourteenth Amendment, the Age Discrimination Act of 1967.  Therefore, the FAC included the following causes of action: Title VII retaliation claim against the DOE (Count I); Title IX sex discrimination claim against the DOE (Count II); a retaliation claim against all Defendants for violation of the State of Hawaii Fair Employment Act, Hawaii Revised Statutes ("HRS") chapters 368 and 378 (Count III); punitive damages claim against all Defendants (Count IV); 42 U.S.C. § 1983 claim that individually named Defendants retaliated against Plaintiff for filing complaints and applied rules in a discriminatory manner (Count V); intentional infliction of emotional distress ("IIED") claim against the individually named Defendants (Count VI); § 1981 claim against individually named Defendants, alleging Plaintiff was illegally discriminated against based on her race and female gender (Count VII); Title VI claim against the DOE (Count VIII); another § 1983 claim alleging the individually named Defendants discriminated and retaliated

against Plaintiff (Count IX); and violation of the Age Discrimination Act of 1967 ("ADEA") against the DOE (Count X).  ("Stucky II Order," Stucky II, Doc. # 116 at 21.)[3]

On January 25, 2008, the Stucky II court granted summary judgment on behalf of the Defendants.  (Id. at 1.)  The court found that the Eleventh Amendment barred Plaintiff's §§ 1981, 1983, ADEA and state law claims against the DOE and the named Defendants to the extent that Plaintiff sought retrospective or compensatory damages.  (Id. at 31-32 (citing Blaycock v. Schwinden, 862 F.2d 1352, 1353 (9th Cir. 1988.)).)  Likewise, the court found that the individual defendants shared in the district's eleventh amendment immunity because they

---

[3] In Stucky II, as part of Plaintiff's opposition to Defendants' motions for summary judgment, Plaintiff's attorney, Andre S. Wooten submitted a declaration purportedly signed electronically by Samuel Moore, "/s/ Samuel Moore."  At the December 3, 2007 hearing on Defendants' motions for summary judgment, Wooten relied on statements made in the declaration during his arguments.

At a  status conference on December 20, 2007, the parties advised the court that during a December 19, 2007 deposition, Moore stated that he had not seen and had not signed the declaration attributed to him.  (Stucky II, Stucky II Order at 23.) Wooten admitted that Moore had not signed the declaration and the Court found that Wooten acted as though the declaration had been signed by Moore at the December 3, 2007 hearing and failed to inform the court otherwise, and thus deliberately misled and committed fraud upon the court.  (Id. at 23-25.) The court sanctioned Wooten in the sum of $2,170 for Defendants' reasonable attorneys' fees. (Stucky II, Doc. # 133.) This decision was affirmed by the Ninth Circuit. (Stucky II, Doc. # 151.)

were sued in their official capacities.  (Id. (citing Kimel v. Florida Bd. of Regents, 528 U.S. 62, 67 (2000)).)

The court therefore held that to the extent that Plaintiff's claims in Count III (HRS ch. 378), Count V (§ 1983), Count VI (IIED), Count VII (§ 1981), Count IX (§ 1983) and Count X (ADEA) sought money damages against the DOE or the named Defendants in their official capacities, those claims were barred by the Eleventh Amendment.  Injunctive relief was therefore determined unavailable to Plaintiff because there were no violations of law to be enjoined.  Summary judgment was granted to defendants as to Counts III, V, VI, VII, IX and X.  (Id. at 32.)

As to Count I, the court again noted that the DOE set forth legitimate, non-retaliatory reasons for its actions involving Plaintiff.  (Id. at 35.)  It also noted that Plaintiff "bears the ultimate burden of submitting evidence indicating that the [Defendants'] proffered reason is merely a pretext for a retaliatory motive." (Id. at 36 (citing Nilsson v. City of Mesa, 503 F. 3d 947, 954 (9th Cir. 2007) (internal citations omitted)).)  The court determined that there was no evidence of Kilborn's alleged bias against Plaintiff, as Kilborn was required to evaluate Plaintiff in the regular course of her duties as principal.  Nor did the court find any evidence supporting Plaintiff's claim that Kilborn solicited complaints from parents,

11

students and other teachers against Plaintiff, noting that Plaintiff's belief that the complaints were unfounded was not supported by any evidence in the record.  (Id. at 44-5.)  Finally, the court noted that Plaintiff's subjective belief that she performed her job satisfactorily did not establish pretext.  (Id. at 46 (citing Cornwell v. Electra Cent. Credit Union, 439 F.3d 1018, 1029 n.6 (9th Cir. 2006) (internal citations omitted)).) Because Plaintiff did not meet her burden of proving pretext for retaliation, the court granted summary judgment on behalf of the DOE with respect to Count I.  (Id. at 48.)  The court also determined that Plaintiff could not show a violation of the collective bargaining agreement or violation of Title VII.  (Id. at 42.)

As to Count II of the FAC, Plaintiff alleged that the DOE discriminated against Plaintiff because she is female, in violation of Title IX.  The court found that Plaintiff's reference to a discrepancy in treatment between her and another male teacher ("Male teachers did not receive the same adverse treatment that Plaintiff received,") (Stucky II, FAC ¶ 40) was not supported by any evidence. Because Plaintiff failed to demonstrate pretext for either her Title VII or Title IX claim, the Court granted summary judgment on behalf of the DOE as to Count II. (Stucky II Order at 49.)

With respect to Count III of the FAC, alleging that Plaintiff was discriminated against based on her race, age and gender in violation of Title VI, the court determined that even if Plaintiff had made a prima facie showing of race discrimination, Plaintiff was unable to demonstrate that the DOE's reason for suspending and terminating her was pretext.  The court therefore granted summary judgment on behalf of the DOE with respect to Count III.[4] (Id. at 50.)

Having granted the DOE's Motion for Summary Judgment on all counts, the Court turned to Plaintiff's claims against Kilborn in her individual capacity.  The FAC alleged violations of §§ 1983 and 1981 and various claims under state-law.  (Id. at 51.)  The Court noted that Plaintiff's FAC contained two indistinguishable § 1983 claims (Counts V and IX.)  (Id.)  Count V alleged that Plaintiff suffered illegal retaliation.  (Id.)  Count IX alleged she was illegally discriminated and retaliated against.  (Id.)  Kilborn construed these claims as a

---

[4]   The court similarly dismissed Plaintiff's Section 1981 claim against Kilborn in her individual capacity claiming discrimination based on Plaintiff's race. (Id. at 58.) The court also determined that while Plaintiff could assert a state-law retaliation claim against Kilborn in her individual capacity, the claim failed for the same reasons her Title VII claim was rejected.  Plaintiff failed to demonstrate that the reasons offered by Kilborn for her suspension, evaluation and termination were pretextual.  Therefore, summary judgment was granted on behalf of Kilborn as to Count III.  (Id. at 59.)

First Amendment retaliation claim and an Equal Protection Cause violation, respectively.  (Id. at 51-2.)

The Stucky II court determined that even if the speech Plaintiff alleged contributed to her suspension and termination was protected, Plaintiff failed to meet her burden to show that her speech was a substantial or motivating factor for the adverse employment action.  (Id. at 53.)  The court found that under the totality of circumstances and in light of Plaintiff's documented job-related deficiencies, the proximity between Plaintiff's speech and the adverse employment actions, as well as the context in which they were set and the lack of a nexus between them, was not sufficient to overcome summary judgment.  (Id. at 54-56.)

Summary judgment was also granted on behalf of Kilborn for claims alleging a violation of equal protection.  Although Plaintiff did not specify which of her federal rights were violated in the FAC, the court interpreted her comments about male teachers receiving different treatment as an allegation of a violation of equal protection.  (Id. at 56.)  The court held that Plaintiff had not set forth any evidence of intentional discrimination based on her gender or any other protected status.  Nor did she prove that she was treated differently than any similarly situated employee not of her protected class.  The court opined that the record clearly showed that the adverse employment actions were the consequence of

14

Plaintiff's job performance only.  The court therefore granted Kilborn's motion as to Counts V and IX.  (Id. at 57.)

The court then turned to Plaintiff's intentional infliction of emotional distress claim.  (Id. at 59.)  In Hawaii, "the elements of the tort of intentional infliction of emotional distress are 1) that the act allegedly causing the harm was intentional or reckless, 2) that the act was outrageous, and 3) that the act caused 4) extreme emotional distress to another."  (Id. (citing Hac v. Univ. of Haw., 102 Haw. 92, 106-07, 73 P.3d 46, 60-61 (2003.)).)  Plaintiff's only reference to the IIED claim stated that the claim should survive because Defendant's actions were pre-meditated and malicious.  (Id. at 60.) Plaintiff did not submit evidence to show that she suffered extreme emotional distress.  Summary judgment was therefore granted on behalf of Kilborn as to Count VI.  (Id.)  In sum, the court granted Kilborn's Motion for Summary Judgment on all claims.  (Id.)

Finally, the Court turned to the issue of punitive damages.  The parties agreed that punitive damages could not constitute an independent claim.  (Id.)  The court noted that a claim for punitive damages is not an independent tort, but a remedy that is incidental to another cause of action. (Id. at 60-61 (citing Ross v. Stouffer Hotel Co. (Hawaii) Ltd., 76 Haw. 454, 466, 879 P.2d 1037, 1049 (1994)).)  Defendant's motions were therefore granted as to Count IV.  (Id. at 61.)

15

On March 11, 2008, Plaintiff filed a "Motion for New Trial or Reconsideration." (Stucky II, Doc. # 112.)  Plaintiff requested reconsideration in order to submit evidence which she had been unable to provide earlier due to the illness of Samuel Moore.  ("Mot. for Recon.," Stucky II, Doc. # 112 at 3.)  Plaintiff also blamed the earlier incident involving the Moore Declaration and subsequent sanction of Andre Wooten on Moore's illness and unavailability.  Plaintiff stated that Moore's deposition would have been taken earlier had Moore informed Plaintiff of the nature of his illness.  Plaintiff excused her lack of information, stating, "it seems . . . clear, based upon experience and human nature why Mr. Moore would not want to freely broadcast such dire and personal medical information."  (Id.)  Plaintiff also stated a need to correct clear manifest error in law.  (Id. at 8.)

On May 6, 2008, the Stucky II court denied Plaintiff's Motion for New Trial or Reconsideration.  ("Stucky II Recon. Order," Stucky II, Doc. # 134.)  The court first examined Plaintiff's allegation that the new evidence offered could not have been produced before the December 3, 2007 hearing.  The court stated that Plaintiff is "obliged to show not only that this evidence was newly discovered or unknown to it until after the hearing, but also that it could not with reasonable diligence have discovered and produced such evidence at the hearing."  (Id. at 7

(citing <u>Frederick S. Wyle Prof'l Corp. v. Texaco, Inc.</u>, 764 F.2d 604, 609 (9th Cir. 1985) (citations omitted)).)  The court found that Plaintiff offered no reason why the "new" evidence offered could not have been collected in a deposition before the November 15, 2007 deadline, stating that Moore's illness was not a legitimate reason for Wooten's lack of diligence.  (<u>Id.</u> at 8.)

The court dismissed Plaintiff's claims of clear manifest error in law, stating that all of Plaintiff's claims were identical to claims addressed in the Stucky II Order granting summary judgment for Defendants.  (<u>Id.</u> at 11.)  The court reiterated its decisions regarding Plaintiff's First Amendment claim and her insufficient evidence of pretext on her Title VII claims.  (<u>Id.</u> at 11-13.)  The court also addressed Plaintiff's allegation that the student injured on December 2, 2005, did not actually sustain any injuries, stating that this allegation did not have any legal significance.  (<u>Id.</u> at 12.)

On May 19, 2008, Plaintiff appealed the Stucky II Order for New Trial or Reconsideration to the Ninth Circuit.  On June 3, 2009, The Ninth Circuit affirmed the district court's decision after reviewing the case de novo.  (Stucky II, Doc. # 151.)  The Ninth Circuit agreed that Plaintiff's "vague allusions to her previous lawsuit and her conclusory, unsupported allegations of animus and due process violations in her grievance proceedings were insufficient to meet her

17

burden on summary judgment." (Id. at 2.)  The Ninth Circuit also affirmed the

district court's decision to deny Plaintiff's "Motion for New Trial or

Reconsideration," stating that there was no evidence that the new depositions

offered by Plaintiff could not have been obtained in a timely manner, or that the

evidence was newly discovered.  (Id. at 3.)  Subsequently, on July 23, 2009, the

Ninth Circuit denied Plaintiff's petition for rehearing and rehearing en banc.

(Stucky II, Doc. # 152.)

      B.    The Instant Case

On May 9, 2009, Plaintiff filed the instant complaint.  ("Compl.,"

Doc. # 1.)  The instant Complaint is almost identical to the FAC submitted in

Stucky II.  The only new factual allegations are contained in paragraphs 8, 37, 39,

and 40 and relate to Plaintiff's final termination and Plaintiff's allegations that her

due process rights under the collective bargaining agreement were violated by such

termination.  (See Compl.)  Plaintiff also includes some additional factual

allegations from events that happened in 2006 in relation to Plaintiff's termination

process.  (See id. ¶¶ 32-35.)

On January 26, 2010, The State of Hawaii Department of Education

("DOE"), Hamamoto, Nomura and Kilborn filed a Motion for Summary Judgment

18

("DOE MSJ," Doc. # 29.)  On January 27, 2010, Defendant Kilborn filed a separate motion for summary judgment.  ("Kilborn MSJ," Doc. # 33.)

The DOE's motion (on behalf of the DOE and employees Kilborn, Nomura, and Hamamoto in their official capacities) seeks summary judgment on the grounds that:  Plaintiff's claims are barred by res judicata; Count 1 (Violation of the ADEA), Count IV (Violation of HRS Chapter 387), Count VI (Intentional Infliction of Emotional Distress) and Count V (Violation of 42 U.S.C. § 1983) are barred by application of Eleventh Amendment Immunity; Count IV (claim for punitive damages) is not a separate cause of action; Plaintiff failed to exhaust her administrative remedies or establish a prima facie case based on the grievances filed regarding Count II (Violation of Title VII); a reasonable, non-retaliatory, legitimate reason existed for the employers' conduct under the burden shifting analysis as to Count II; and Plaintiff fails to establish a claim under Title IX regarding Count III (Violation of Title IX).  (See DOE MSJ.)

Kilborn seeks summary judgment on the grounds that: the court has no jurisdiction over Kilborn in her individual capacity; Plaintiff's claims are barred by res judicata, Plaintiff failed to establish a prima facie case regarding Counts IV, V and VI; state claims contained in Count IV and Count VI are barred by application of official immunity; Plaintiff failed to exhaust her administrative

19

remedies as to Count IV; and Count IV (claim for punitive damages) is not a separate cause of action.  (See Kilborn MSJ.)

Plaintiff filed Memorandum in Opposition on March 11, 2010, ("Opp'n," Doc. # 48) and a supplement to the memorandum on March 17, 2010. (Doc. # 53.)  Replies to the Opposition were filed by the DOE and Kilborn the same day.  (respectively, Docs. # 54, 55.)

## STANDARD OF REVIEW

Rule 56 requires summary judgment to be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); see also Porter v. Cal. Dep't of Corr., 419 F.3d 885, 891 (9th Cir. 2005); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).  A main purpose of summary judgment is to dispose of factually unsupported claims and defenses.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial.  See id. at 323.  The burden initially falls upon the moving party to identify for the court those "portions of the materials on file that it believes demonstrate the absence of

any genuine issue of material fact." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323).

Once the moving party has carried its burden under Rule 56, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial" and may not rely on the mere allegations in the pleadings. Porter, 419 F.3d at 891 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)). The opponent "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial. T.W. Elec. Serv., Inc., 809 F.2d at 630 (citation omitted) (emphasis added). If the nonmoving party produces direct evidence of a material fact, the court may not assess the credibility of this evidence nor weigh against it any conflicting evidence presented by the moving party. The nonmoving party's evidence must be taken as true. Id. at 632 (internal citations omitted). However, if the factual context makes the non-moving party's claim or defense implausible, the party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue of trial. Id. at 587. An issue of fact must be genuine; "[w]hen opposing parties tell two different stories, one of which

21

is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007).

DISCUSSION

I.    Res Judicata: Claim Preclusion

Defendants assert that the Plaintiff's claims are precluded by res judicata.  (DOE MSJ at 12; Kilborn MSJ at 9.)  Plaintiff does not directly support her assertion that res judicata does not apply, and instead, cites extensive case law regarding why her current lawsuit arises from the same transaction as her prior suits so as to relate her prior claims of discrimination to her final termination. (Opp'n at 27-30, 32-38.)

Res judicata, or claim preclusion, "bars litigation in a subsequent action of any claims that were raised or could have been raised in the prior action." Western Radio Servs. Co. v. Glickman, 123 F.3d 1189, 1192 (9th Cir. 1997) (citing Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 398 (1981)).  The doctrine applies whenever three elements are met: (1) an identity of claims; (2) a final judgment on the merits; and (3) identity or privity between parties." Id. (citing Blonder-Tongue Lab. v. University of Ill. Found., 402 U.S. 313, 323-24

22

(1971)); see also Tahoe Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency, 322 F.3d 1064, 1077 (9th Cir. 2003).

In the instant case, the Court finds that Defendants have met the second element of res judicata because both Stucky I and Stucky II ended in final judgments, the district court fully addressed the merits of Plaintiff's claims in both cases, and the decision was affirmed by the Ninth Circuit in dismissing such claims. The Court also finds Defendants have met the third element of res judicata because the parties named in the instant Complaint are identical to those in Stucky I and Stucky II and sued in identical capacities.

As to the first element of res judicata, careful comparison of the instant Complaint and the Stucky II FAC shows that the instant Complaint contains only those claims raised, litigated, and adjudged in the Stucky II FAC: Plaintiff's instant Complaint Count 1, Violation of the ADEA, corresponds with Stucky II FAC Count X, Violation of the ADEA; Plaintiff's instant Complaint Count II, Violation of Title VII, corresponds with Stucky II FAC Count I, Violation of Title VII; Plaintiff's instant Complaint Count III, Violation of Title IX, corresponds with Stucky II FAC Count II, Violation of Title IX;  Plaintiff's instant Complaint Count IV, Violation of Hawaii Revised Statutes sections 368 and 387, corresponds with Stucky II FAC Count III, Violation of Hawaii Revised Statutes sections 368 and

23

387;  Plaintiff's instant Complaint Count IV (Plaintiff's second "Count IV"), claim for punitive damages, corresponds with Stucky II FAC Count IV, claim for punitive damages; Plaintiff's instant Complaint Count V, Violation of 42 U.S.C. § 1983 based on illegal retaliation under state law based upon Plaintiff's termination, corresponds with Stucky II FAC Count V, Violation of 42 U.S.C. § 1983 based on illegal retaliation under state law based upon Plaintiff's termination; and Plaintiff's instant Complaint Count VI, Intentional Infliction of Emotional Distress, corresponds with Stucky II FAC Count VI,  Intentional Infliction of Emotional Distress.

In fact, the only new events that have occurred since Plaintiff filed her Stucky II FAC are Hamamoto's letter to Plaintiff dated February 15, 2008, where in she offered to hold another meeting on February 26, 2008, to provide Plaintiff with another opportunity to further discuss Plaintiff's recommendation for termination prior the Superintendant's decision and Plaintiff's final termination on May 1, 2009, effective May 11, 2009.[5]  Plaintiff's unsatisfactory review and the

---

[5] Plaintiff's factual allegations regarding violations of "HSTA-DOE" contract based on denial of the benefits of grievance and arbitration under Plaintiff's Count I, ADEA claim, do not relate in anyway to age discrimination and Plaintiff has not shown that they are so related.  Further, the Stucky II court determined that a due process violation claim based on similar allegations was no more than bare assertion on Plaintiff's part, and was not sufficient to show a violation of the collective bargaining agreement or violation of Title VII.  (Stucky

supporting documents that are the basis of the complaints in both Stucky I and Stucky II were cited as the basis for the final termination.

Aside from Plaintiff's final termination, which is addressed below, the fact that for some of Plaintiff's instant counts she added a minimal amount of factual evidence does not create a new cause of action. See Costantini v. Trans World Airlines, 681 F.2d 1199, 1201 (9th Cir. 1982) ("Under federal law, appellant does not avoid the bar of res judicata merely because he now alleges conduct by [appellee] not alleged in his prior suit[.]").

The Court will now address Plaintiff's claim that her final termination created a new event for which she can initiate the instant suit.  (Opp'n at 27.)  The crucial question regarding the first element of the res judicata determination is whether Plaintiff has stated in the instant suit a cause of action different from those raised in her prior suits.  Costantini, 681 F.2d at 1201.  Plaintiff cannot avoid the bar of res judicata merely because she alleged conduct by Defendants not alleged in her prior suits.  Id.  In order to ascertain whether successive causes of action are the same, the Ninth Circuit uses the transaction test.  Adams v. California Dept. of

_____

II Order at 42.)  Moreover, Plaintiff has not alleged a claim in connection with the factual allegations.

<u>Health Services</u>, 487 F.3d 684, 689 (9th Cir. 2007).  The transaction test requires a

determination of:

> (1) whether rights or interests established in the prior judgment would
> be destroyed or impaired by prosecution of the second action; (2)
> whether substantially the same evidence is presented in the two
> actions; (3) whether the two suits involve infringement of the same
> right; and (4) whether the two suits arise out of the same transactional
> nucleus of facts.

<u>Costantini</u>, 681 F.2d at 1201-02 (citing Harris <u>v. Jacobs</u>, 621 F.2d 341, 343 (9th

Cir. 1980)).  The last of these criteria is the most important.  <u>Id.</u> at 1202.  However,

the Ninth Circuit is clear that "[n]o single criterion can decide every res judicata

question; identity of causes of action "cannot be determined precisely by

mechanistic application of a simple test."  <u>Id.</u> (citing <u>Abramson v. University of</u>

<u>Hawaii</u>, 594 F.2d 202, 206 (9th Cir. 1979).  "Whether two events are part of the

same transaction or series depends on whether they are related to the same set of

facts and whether they could conveniently be tried together."  <u>Id.</u> at 689 (citing

<u>Western Sys., Inc. v. Ulloa</u>, 958 F.2d 864, 871 (9th Cir. 1992) (citing Restatement

(Second) Judgments § 24(1)).

  In <u>Frank v. United Airlines, Inc.</u>, 216 F.3d 845 (9th Cir. 2000), the

Ninth Circuit held that "a claim arising after the date of an earlier judgment is not

barred, even if it arises out of a continuing course of conduct that provided the

basis for the earlier claim." Id. at 851 (citing Lawlor v. National Screen Serv. Corp., 349 U.S. 322, 328 (1955)).  In Frank, a certified class of plaintiffs alleged Title VII violations based on a United Airlines maximum weight policy that purportedly discriminated against female and older flight attendants. Id. at 848. The district court dismissed plaintiffs' facial attack on United Airlines' weight policy as barred under res judicata by a 1979 judgment involving a similar class of plaintiffs and allegations. Id. at 850.  In reviewing the district court decision, the Ninth Circuit applied the transactional test and found that "[b]ecause United changed its weight tables and weight policy in 1980 as part of the post-judgment settlement, we hold that plaintiffs' claims in this case do not arise from the 'same transactional nucleus of facts.'" Id. at 853.  Therefore, the court reversed, and held that the 1979 judgment involved an earlier version of United Airlines' weight policy and could not preclude claims based the 1980 policy in dispute. Id. at 851 ("[b]ecause the [prior] judgment . . . was entered in 1979 . . . it cannot preclude claims based on events occurring after that date.").

The court in Durney v. Wavecrest Laboratories, L.L.C., 441 F. Supp. 2d 1055 (N.D. Cal.  2005) explained when a prior claim includes all rights of the plaintiff to remedies against the defendant depends on "whether the two causes of action allege the same conduct and whether the two causes of action allege conduct

27

which is contemporaneous." Id. at 1060.  As to the contemporaneity element, the court stated that where subsequent allegations were based on new evidence of alleged wrongdoing, if that wrongdoing was contemporaneous to the wrongdoing alleged in the prior lawsuit then a claim based on such wrongdoing would be barred by res judicata.  Id. (citing Costantini, 681 F.2d at 1200).  On the other hand, the court cited Frank in showing a temporal distinction between subsequent cases where a wrongdoing arose after the date of an earlier judgment and arose from a different transactional nucleus of facts.  Id. (citing Frank, 216 F.3d at 850).

In the instant case, judgment on the Stucky II FAC was entered by the district court on January 25, 2008, well before Plaintiff's final termination. Notwithstanding, Plaintiff's claims in the instant Complaint, including those that involve termination, are based upon facts identical to her previous claims. Moreover, not only did Plaintiff's causes of actions surrounding her termination exist, Plaintiff raised such causes of action, including the "adverse action" of her termination, in her Stucky II FAC and such claims were adjudged by both the district court and the Ninth Circuit.  See Lawlor, 349 U.S. at 328 ("While the 1943 judgment precludes recovery on claims arising prior to its entry, it cannot be given the effect of extinguishing claims which did not even then exist and which could not possibly have been sued upon in the previous case.").

28

Plaintiff's instant lawsuit is distinguishable from the successive cause of action in <u>Frank</u> in that there has been no new conduct or change in circumstances giving rise to a new cause of action occurring after the date of the previous judgment.  In each of Plaintiff's lawsuits, it is the unsatisfactory performance evaluation, suspension, and termination that constitute the alleged wrongdoing by Defendants.  The only difference between the first two lawsuits and the instant suit is that termination recommendation procedure has been finalized. Plaintiff, however, has already alleged claims of retaliatory motive leading to her termination in her previous lawsuit.  (Stucky II, FAC at 8.)  Although Plaintiff may argue that the final termination constituted a temporally distinct course of conduct, <u>see</u> <u>Durney</u>, 441 F. Supp. 2d at 1059-1060, in the instant case where Plaintiff's termination was effectuated but not approved, such an action cannot be considered distinct and any "wrongdoing" was in fact contemporaneous to the wrongdoing alleged in the prior lawsuit as illustrated by the fact that Plaintiff's instant Complaint does not allege new actions of wrongdoing in connection with her final termination nor does she allege any new causes of action.  Indeed, Kilborn did not take any further action concerning the Plaintiff or in connection with her performance evaluation after June 9, 2006, at which time Kilborn recommended Plaintiff's termination to the complex area superintendent.  (Doc. # 33 at 2).

29

Plaintiff's allegedly "new" factual allegations occurring in May 2009 are insufficient to support new claims because those events were based upon facts that were in existence before Plaintiff submitted her Stucky II FAC.   Moreover, Plaintiff relies on the same factual allegations to support any claims for retaliation based on her final termination, i.e. the circumstances surrounding her unsatisfactory performance evaluation and suspension, because these claims are identical to those raised in her Stucky II FAC.  See Adams, 487 F.3d at 690. Importantly, there is no allegation by Plaintiff and no evidence to support any assertion that Plaintiff's final termination involved any "events" that would allegedly constitute new retaliation.  Therefore, Plaintiff's instant lawsuit arises out of the same transactional nucleus of facts as her previous two suits.  Not only are the three Stucky lawsuits "related to the same set of facts and . . . could conveniently [have been] tried together[,]" the lawsuits are based on identical facts and Stucky II and the instant case would have involved identical issues for trial due to the fact that identical claims are raised in the instant Complaint.  See Western Sys., Inc., 958 F.2d at 871 (citation omitted.)

In addition, the substantial need for finality in the instant case weighs in favor of barring Plaintiff's instant Complaint.  As the Ninth Circuit has stated:

The doctrine of res judicata provides that "a final judgment on the merits bars further claims by parties or their privies based on the same cause of action."  The application of this doctrine is "central to the purpose for which civil courts have been established, the conclusive resolution of disputes within their jurisdiction." Moreover, a rule precluding parties from the contestation of matters already fully and fairly litigated "conserves judicial resources" and "fosters reliance on judicial action by minimizing the possibility of inconsistent decisions."

Tahoe Sierra, 322 F.3d at 1077 (quotation omitted).  After four years of litigation, three years of which have been devoted to adjudicating harm allegedly caused by Plaintiff's termination, the final judgments of Stucky I and Stucky II should remain undisturbed.  See id.  Stucky, through her attorney, has had a full and fair opportunity to be heard.  Id.  Here, Defendants' right to be free of Plaintiff's claims, established in Stucky I and Stucky II, would be destroyed by prosecution of the instant action.

For all the reasons above, Plaintiff's instant Complaint is barred by res judicata.  The fact that the effective date of Plaintiff's final termination was approximately two years after Plaintiff's Stucky II FAC does not serve to change this determination because her claim still arises out of the same transactional nucleus of facts with no change in circumstances.  Moreover, Plaintiff's Stucky II FAC alleged all of the causes of action contained in Plaintiff's instant Complaint

based upon Plaintiff's termination and those causes of action were actually

litigated, even before Plaintiff's termination was made final by the Superintendent.

Therefore, Plaintiff had her opportunity in court and is now barred from re-

litigating identical causes of action.

II.     Collateral Estoppel: Issue Preclusion

Res judicata involves both issue preclusion and claim preclusion.[6]

United States v. Oregon, 470 F.3d 809, 817 (9th Cir. 2006). Not only is Plaintiff's

instant lawsuit barred by claim preclusion, it is also barred by issue preclusion.

"'Collateral estoppel, or issue preclusion, bars the relitigation of issues actually

adjudicated in previous litigation between the same parties.'" Kamilche Co. v.

United States, 53 F.3d 1059, 1062 (9th Cir. 1995) (quoting Clark v. Bear Stearns &

Co., 966 F.2d 1318, 1320 (9th Cir. 1992)), amended on rehearing, 75 F.3d 1391

(9th Cir. 1996).

A decision by a federal court has preclusive effect where: (1) the issue

necessarily decided at the previous proceeding is identical to the one which is

sought to be relitigated; (2) the first proceeding ended with a final judgment on the

merits; and (3) the party against whom collateral estoppel is asserted was a party or

---

[6] This Court will give a broad reading to Defendants' use of the term "res judicata" to include both claim and issue preclusion.

in privity with a party at the first proceeding.  Hydranautics v. FilmTec Corp., 204

F.3d 880, 885 (9th Cir. 2000) (citation omitted).  As found by the Court above, the

second and third elements of collateral estoppel are satisfied because Stucky II

ended with a final judgment on the merits and the parties to Stucky II and the

instant Complaint are identical.

     "[T]he doctrine of collateral estoppel can apply to preclude relitigation

of both issues of law and issues of fact if those issues were conclusively

determined in a prior action."  United States v. Stauffer Chem. Co., 464 U.S. 165,

170-71 & n.3 (1984) ("a fact, question or right distinctly adjudged in the original

action cannot be disputed in a subsequent action, even though the determination

was reached upon an erroneous view or by an erroneous application of the law."

(quoting United States v. Moser, 266 U.S. 236, 242 (1924)) (emphasis in

original))).  The burden is on the party asserting collateral estoppel to first show

that the estopped issue is identical to an issue litigated in a previous action.

Kamilche, 53 F.3d at 1062 (citation omitted).  Additionally, "the issue to be

foreclosed in the second litigation must have been litigated and decided in the first

case.'" Id. (citation omitted).  "Collateral estoppel is inappropriate if there is any

doubt as to whether an issue was actually litigated in a prior proceeding."  Eureka

Fed. Sav. & Loan Ass'n v. Am. Casualty Co. of Reading, Penn., 873 F.2d 229, 233

(9th Cir. 1989) (citation omitted).  If the decision could have been rationally grounded upon an issue other than that which the defendant seeks to foreclose from consideration, collateral estoppel does not preclude relitigation of the asserted issue."  Id. (quotation omitted).

In deciding whether issues in a successive proceeding are identical to those litigated in a prior action, the Ninth Circuit has adopted the analysis of the Restatement (Second) of Judgments § 27.  See Kamilche, 53 F.3d at 1062.  The Court considers four factors:

> (1) is there a substantial overlap between the evidence or argument to be advanced in the second proceeding and that advanced in the first?
>
> (2) does the new evidence or argument involve the application of the same rule of law as that involved in the prior proceeding?
>
> (3) could pretrial preparation and discovery related to the matter presented in the first action reasonably be expected to have embrace the matter sought to be presented in the second?
>
> (4) how closely related are the claims involved in the two proceedings?

Id. (quoting Restatement (Second) of Judgments § 27 cmt. c. (1982)).

Applying these factors, the Court finds that the issues in Plaintiff's instant suit are identical to those litigated in her prior action.  First, there is almost

complete overlap between the evidence and arguments to be advanced in the Stucky II FAC and the instant Complaint.  In the instant Complaint, Plaintiff continues to raise the same arguments of retaliation and discrimination regarding her 2006 performance evaluation and ultimate termination which were the subject of the determinations made in Stucky II.  Further, in her pleadings, Plaintiff continues to discuss, at length, events that occurred in 2005 and 2006 as the basis for the instant action.  The pleadings do not suggest that the Plaintiff has any new evidence to present to the Court besides a letter dated May 1, 2009, that made her termination, a termination based entirely on facts previously reviewed by the Stucky II court, final.  To support her retaliation and discrimination claims, Plaintiff must necessarily rely on the same evidence presented in Stucky II.

Secondly, even construing the May 2009 letter as "new" evidence, the instant suit involves the application of the same rules of law as those involved in the prior proceedings due in primary part to the fact that Plaintiff has raised claims identical to those raised in her Stucky II FAC.  Plaintiff's instant allegations of "illegally motivated termination," culminating in the May 2009 letter, stem from her belief that she was issued an unsatisfactory performance evaluation because of retaliation and discrimination.  The Stucky II court already determined that the

35

Plaintiff's failure to perform her job in a satisfactory manner was a legitimate, non-retaliatory reason for her unsatisfactory evaluation.  (Stucky II Order at 36.)  The court also determined that Plaintiff failed to demonstrate pretext, bias, or animosity on part of Defendants.  (Id. at 43-44.)  Because Plaintiff asserts identical causes of action and the same factual allegations in the instant case as those ruled upon in prior judgments, which were also affirmed on appeal, any arguments or evidence presented in the instant case will involve an application of the same rules of law as the prior actions.

Consideration of the final two factors also weighs in favor of finding issue preclusion for all of the claims included in Plaintiff's Complaint, including her allegations of retaliation and discrimination leading to her "illegally motivated termination."  Indeed, pretrial preparation and discovery related to the matter presented in the Stucky II would have embrace all of the facts material to Plaintiff's allegations in the instant Complaint.  Regarding the fourth and final factor, the claims involved in the two proceedings are certainly closely related, identical except for the finalization of Plaintiff's termination, as discussed by the Court in the foregoing claim preclusion analysis.

In sum, a federal court as well as the Ninth Circuit have already considered and decided the issues of fact and law pertaining to Plaintiff's allegations of retaliation and discrimination leading to her allegedly "illegally motivated termination."  Although Plaintiff's termination was not officially finalized until May 2009, Plaintiff's assertions of retaliation, pretext, bias, and discrimination based upon her termination were already adjudged on the merits in Stucky II.

It is clear that the Plaintiff controlled the timing of her earlier complaints.  The fact that she decided to file her earlier complaints when she did, and given her full opportunity to litigate the merits of her claims, should not, by itself, afford her a third futile bite at the apple.  Applying the doctrine of res judicata, including collateral estoppel, the Court finds that Plaintiff's instant suit is barred by both claim and issue preclusion.  Accordingly, the Court GRANTS Defendants' Motions for Summary Judgment as to all counts.

<u>CONCLUSION</u>

The Court **GRANTS** Defendants' Motions for Summary Judgment. (Docs. ## 29, 33.)  No claims remain against the DOE and named Defendants in

their official capacities.  There are no remaining claims against Kilborn in her individual capacity.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, March 31, 2010.



_____
David Alan Ezra
United States District Judge

Stucky v. State of Hawaii Dep't of Educ. et al., CV. NO. 09-00209 DAE BMK; ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT